525 So.2d 288 (1988)
Jean B. STEPHENS, et al.
v.
PACIFIC EMPLOYERS INSURANCE COMPANY, et al.
No. 87 CA 0231.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
Rehearing Denied June 14, 1988.
*289 Earl B. Taylor, Opelousas, for plaintiffsappellees Jean B. Stephens, Thomas Brogan, Robert Brogan, Sidney Brogan, Justin Brogan and Joyce B. Tyrone.
Luther Wilson, Baton Rouge, for defendants-appellants Pacific Employers Inc., Co., Shallow Draft Towing, Inc., D & G Boat Rentals, Inc., Victor L. Dinger and Francis Reilly.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is a suit for damages arising out of the death of Gladys Reilly.

FACTS
On April 10, 1983, Gladys Reilly was a passenger aboard the M/V Alton D, which was proceeding north on the Mississippi River near Plaquemine, Louisiana. Mrs. Reilly was accompanying her husband, Captain Francis "Frank" Reilly, on a trip from Berwick to Port Allen. At approximately 2:00 p.m., Gladys Reilly was in the wheelhouse with her husband. While attempting to adjust the blinds near the stairwell between the wheelhouse and the main deck, Gladys Reilly fell down the stairwell and died shortly thereafter.
On April 6, 1984, plaintiffs, five of decedent's six adult children by a previous marriage, filed wrongful death and survival actions for the death of their mother under the theories of strict liability and negligence.[1] Named as defendants were: Captain Francis Reilly, skipper of the M/V Alton D; Shallow Draft Towing, Inc., owner of the M/V Alton D; D & G Boat Rentals, Inc., the operating company of the M/V Alton D; Victor Dinger, President of both Shallow Draft Towing, Inc. and D & G Boat Rentals, Inc.; and Pacific Employers Insurance Company, liability insurer of the other defendants.
After trial, the jury returned a verdict in favor of plaintiffs and against all defendants, assigning percentages of negligence as follows:

Victor Dinger 75%
Captain Francis Reilly 15%
Gladys Reilly 10%

Judgment was rendered, awarding plaintiffs $15,428.57 in damages for their survival action and $31,500.00 each in damages for their wrongful death actions.
From this adverse judgment, defendants appeal, assigning the following errors:
I. The trial court erred in finding that either Victor Dinger or Francis Reilly owed a duty to Mrs. Reilly to prevent her from boarding the M/V Alton D, when she expressly desired to board the vessel and where there were no public laws or regulations violated by her doing so.
II. The trial court and jury erred in finding defendants responsible for the death of Gladys Reilly.
III. The jury verdict should be disregarded by the Court of Appeal due to the error by the trial court affecting the selection of the jurors and in the failure of the trial court to give requested jury instructions concerning the plaintiffs' assumption of the risk and the absence of any duty on the part of Francis Reilly to give a warning of an open and obvious danger to Gladys Reilly.

ASSIGNMENTS OF ERROR NOS. 1 & 2
In these assignments of error, defendants contend that the trial court erred in finding them liable for plaintiffs' damages. Defendants reason that neither Victor Dinger, Francis Reilly, nor any other defendant owed plaintiffs' decedent a duty, the breach of which caused decedent's harm.
Under a duty/risk analysis, the pertinent inquiries are:
I. Whether the conduct of which plaintiff complains was a cause in fact of the harm;
II. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
III. Whether there was a breach of that duty; and

*290 IV. Damages.
Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.1985); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La. 1984); Eldridge v. Downtowner Hotel, 492 So.2d 64 (La.App. 4th Cir.1986).
A defendant's conduct is actionable under the duty-risk analysis where it is both a cause in fact of the injury and a legal cause of the harm incurred. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Fowler v. State Farm Fire & Casualty Insurance Co., 485 So.2d 168 (La.App. 2nd Cir.1986), writ denied, 487 So.2d 441 (La. 1986). See South Central Bell Telephone Company v. Hartford Accident & Indemnity Company, 385 So.2d 830 (La.App. 1st Cir.1980), writ denied, 386 So.2d 356 (La. 1980). The cause in fact test requires that but for the defendants' conduct, the injuries would not have been sustained. The legal cause test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Sinitiere v. Lavergne, supra; Fowler v. State Farm Fire & Casualty Insurance Co., supra.
In the instant case, the actions of Victor Dinger and Francis Reilly in permitting Gladys Reilly on board the M/V Alton D satisfy the "but for" cause in fact requirement; however, there must also be a substantial relationship between defendants' actions or omissions and decedent's fall.
The record reflects that after being offered an opportunity to accompany her husband on a trip up the river, Gladys Reilly, desiring to accompany her husband, voluntarily chose to board the M/V Alton D. Once aboard, Francis Reilly showed his wife the various areas of the vessel. The living quarters and restroom facilities were located on the main deck beneath the wheelhouse. Decedent traversed the stairwell leading from the wheelhouse to the main deck numerous times while aboard the M/V Alton D.
At the time of the accident, Francis and Gladys Reilly were alone in the wheelhouse. Captain Francis Reilly was steering the vessel, which was proceeding smoothly in the river. At approximately the same time, Gladys Reilly approached her husband to inquire about adjusting the blinds. Captain Reilly recalled telling his wife she could adjust the blinds and then hearing something or someone fall down the stairwell. Although Captain Reilly did not know what caused his wife to fall, he determined that the boat did not maneuver in such a way as to cause her fall.
Brent Barbier, a detective with the Iberville Parish Sheriffs office, investigated the accident. After thoroughly examining the stairwell, Barbier determined that there was no foreign material on the stairs or loose material on the deck. He observed nothing out of the ordinary which would have caused Gladys Reilly's fall. Further, Barbier noted that the handrail along the stairwell was in place. Barbier determined that Gladys Reilly first came in contact with the vessel on the deck at the end of the stairs and that, during her fall, she had not hit any of the steps or the wall of the stairwell.
Dr. James Freeman, a board certified pathologist and Iberville Parish Coroner, performed an autopsy on Gladys Reilly on April 11, 1983. Dr. Freeman determined that Gladys Reilly died from brain rupture, which occurred as a result of her fall down the stairs. He also found evidence of a cardiac problem, which, while serious, was not deadly. He determined, however, that Gladys Reilly should have guarded against strenuous exercise which might aggravate her heart condition. Dr. Freeman also discovered a meningioma, a tumor on her brain, which was not large enough to produce any significant symptoms or death. Dr. Freeman acknowledged, however, that such tumors could cause symptoms ranging from fainting spells to constant headaches.
Dr. Freeman also testified about the cause of Gladys Reilly's fall. From the autopsy, he was unable to determine whether she had an episode of heart failure producing fainting or fell for some other reason. He did observe that a small ½" portion of the heel on one of her gum soled shoes was missing, but acknowledged that *291 it may or may not have had anything to do with the accident.
After thoroughly reviewing the entire record, we find that the record reflects that decedent's fall resulted from her own conduct lack of care, poor judgment, spontaneous medical problem, or other factor over which defendants had no control. Plaintiffs did not establish that there was a substantial relationship between decedent's fall and any negligence on the part of defendants.
The question then becomes whether the defendants had a duty to protect decedent from her own conduct. The principal juridical element of an action in negligence is a duty, apparent to reason and common sense, to avoid acts and omissions which engender an unreasonable risk of harm to others. Stephens v. State, Department of Transportation and Development, 440 So.2d 920 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 1119 (La.1984). Implicit in this notion of duty is that there are some risks which are reasonable. An individual encountering such risks bears the responsibility of dealing with and/or avoiding them. Thus, a visitor assumes the obvious, normal, or ordinary risks attendant on the use of the premises, and owners are not liable for injuries to a visitor when those injuries result from a danger which he should have observed in the exercise of reasonable care. Eldridge v. Downtowner Hotel, supra; Calhoun v. Royal Globe Insurance Co., 398 So.2d 1166 (La.App. 2nd Cir.1981). See Bell v. Marriott Hotels, Inc., 411 So.2d 687 (La.App. 4th Cir.1982), writ denied, 413 So.2d 908 (La.1982); Leonard v. Albany Machine and Supply Company, 339 So.2d 458 (La.App. 1st Cir. 1976), writ denied, 341 So.2d 419 (La.1977).
In the instant case, the risk of harm was that of falling down the stairs between the main deck and the wheelhouse. Such a risk is an obvious and reasonable risk of harm which defendants had no duty to protect against.
However, plaintiffs argue that decedent was an elderly woman with congestive heart failure and crippling bursitis and that, because of decedent's condition, defendants should have forseen that an accident was likely and were under an obligation to protect her from herself. We disagree.
A vessel or her crew are not the insurers of the safety of those who board her. Moore v. American Scantic Line, 121 F.2d 767 (2d Cir.1941). See Counts v. Lafayette Crewboats, 622 F.Supp. 299 (W.D.La.1983). A guest aboard a vessel is only owed the duty of reasonable care under the circumstances. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). The mere fact that a plaintiff is elderly does not mean that he is entitled to greater care and assistance, just as the age of a plaintiff does not in and of itself affect the standard of care applied in determining contributory negligence. Walden v. Pat Goins Benton Road Beauty School, Inc., 501 So.2d 1014 (La.App. 2nd Cir.1987). See LaCava v. City of New Orleans, 159 So.2d 362 (La.App. 4th Cir.1964). The elderly do not, per se, belong to those classes of individuals who must be protected from themselves, such as infants, inebriates, interdicts, or drug addicts. See Argus v. Scheppegrell, 472 So.2d 573 (La.1985); Oliver v. Capitano, 405 So.2d 1102 (La.App. 4th Cir. 1981), writs denied, 407 So.2d 731, 734 (La.1981). See also Pence v. Ketchum, 326 So.2d 831 (La.1976), overruled in part by Thrasher v. Leggett, 373 So.2d 494 (La. 1979). The deciding factors are signs of feebleness, impairment of vision or hearing, disorientation of mind or body, or any other infirmities that may sometimes accompany old age. Once we have decided the standard, we must determine what it requires in this case. What will constitute reasonable care varies in each case and is dependent on the facts in each individual case. Walden v. Pat Goins Benton Road Beauty School, Inc., supra.
In the instant case, the record reveals that at the time of her death Gladys Reilly was seventy-two years old. The previous year she had been treated for cardiac problems and had been given nitroglycerin tablets, which had apparently been successful in treating her condition. Further, a *292 few months before the accident, Mrs. Reilly had complained of bursitis and was being treated with Vitamin B-12 shots.
Several of Gladys Reilly's children testified regarding their mother's physical health. While several discussed their mother's age and "poor health," the overwhelming sentiment was that their mother led an active and full life. Gladys and Frank Reilly had physically and financially assisted several of her children. Gladys Reilly had nursed one of her daughters, who was recovering from spouse abuse, for some three and one-half months. Gladys Reilly also accompanied one of her daughters-in-law shopping on a daily basis and would occasionally dine out. Gladys and Francis Reilly attended bar-b-ques and had gone on numerous camping expeditions with another son's family.
Additionally, although several of Gladys Reilly's children saw her the day she left to board the M/V Alton D, none of them expressed their concern that their mother was too old, too feeble, or too ill to accompany her husband. Francis Reilly testified that, although his wife had some health problems, he "hadn't seen her look that good in a long time as she looked" the day of the accident.
While we sympathize with Gladys Reilly's family, we find that the plaintiffs failed to establish that the negligence of any of the defendants caused Gladys Reilly's fall or that defendants knew or should have known that Gladys Reilly needed any special care or assistance. Therefore, we find that the trial court erred in finding defendants liable for plaintiffs' damages.
For the above reasons, the judgment of the trial court finding that defendants were negligent and that their negligence caused plaintiffs' damages as well as the award of damages is reversed. Costs are assessed against plaintiffs.
REVERSED.
NOTES
[1] At trial, plaintiffs' theory of recovery was based solely upon negligence.